UNITED FELDSPAR & MINERALS CORPORATION

*vs.*

HARRY E. BUMPUS ET AL.

Oxford.   Opinion, October 21, 1946.

*Brann, Isaacson & Lessard,*

*Thomas E. Delahanty,*

*Raymond Burdick,* for plaintiff.

*George C. Wing, Jr.,* for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, JJ.

Murchie, J.  In this case the plaintiff's bill of complaint, seeking the cancellation of a 50-year mining lease dated June 1, 1927 on the ground that a covenant to carry on mining operations with reasonable diligence is implicit in any lease providing for rental on a royalty basis where there is no provision for a minimum annual rental, was dismissed by decree dated July 6, 1945 for the assigned reasons that the original parties to the lease did not contemplate such a requirement; that forfeitures and cancellations are not favored at law or in equity but rest within the discretion and conscience of the court, and that such discretion and conscience were not moved to action on the evidence presented. Notice was forwarded to counsel on July 9, 1945. Plaintiff attempted to appeal on August 15, 1945, too late to comply with the requirements of R. S. 1944, Chap. 95, Sec. 21, but leave therefor was granted on August 22, 1945, in accordance with the provisions of R. S. 1944, Chap. 95, Sec. 25.

The process was filed on October 18, 1943; separate answers on November 4, 1943, and a replication on November 16, 1943. The case lay dormant thereafter until April 21, 1945 when the plaintiff was authorized to inspect the leased premises on proper motion. In the interval between the filing of the bill of complaint and the hearing, and for a long time prior to that filing, the parties had litigated the liability of the defendants for royalties on minerals removed from the demised premises between October 1, 1934 and October 16, 1940, and the reversion following the lease had been sold on partition proceedings. The plaintiff had instituted all the litigation as the owner of twenty undivided thirtieth parts of the reversion; had collected $2,361.68 as its share of the overdue royalty, and had acquired title to the entire property, subject to the lease. It prosecutes this action on the title acquired on July 8, 1943 from the purchaser at the judicial sale. On March 1, 1943 the purchaser at the judicial sale made demand on the defendants that mining operations be resumed promptly and conducted

during the balance of the leasehold term with reasonable diligence and advised that if operations were not resumed proceedings would be taken for the cancellation of the lease. The deed to the plaintiff carried an assignment of all rights under the demand.

The lessors were Allen E. Cummings and Sybil E. Cummings, a brother and sister of the defendant Laura J. Bumpus. The property demised was described as the homestead farm of Joseph W. Cummings, on which the brother and sister made their home. It had never been developed as a mine. The brother had carried on some casual or exploratory mining work but he had no mining equipment and had never removed or sold any minerals when the lease was executed. The lessees were a husband and wife, the former a druggist. Neither had ever engaged in mining. There is nothing in the lease to indicate that the parties contemplated that mining operations should be commenced promptly or that once commenced they should be prosecuted with diligence. As a matter of fact they were not commenced until after the lapse of about seven years. During the next six years something over 8,300 long tons of feldspar were removed, along with 500 tons of quartz or thereabouts, a little less than 2,500 tons of beryl and mica scrap in negligible quantity. The machinery used was borrowed or rented largely from the plaintiff or its corporate predecessor and the entire output sold to it. The plaintiff became an owner of a part of the reversion on January 2, 1940 (see *United Feldspar & Minerals Corp.* v. *Bumpus et al.,* 141 Me., 7, 38 A., 2d, 164). It was familiar with the entire history of the operations under the lease. The title on which it prosecutes the present action is "subject to all rights" of the lessees under the lease, to quote the language of the deed given to consummate the judicial sale.

The plaintiff seeks cancellation of the lease, notwithstanding the recital of the deed, on the ground that a covenant to mine with reasonable diligence should be implied against the lessees

and that it should have been found that that covenant had been breached. Counsel for the plaintiff cite us to decisions which they claim assert the principle involved. Included among the eighteen cases cited is *Freeport Sulphur Co. et al.* v. *American Sulphur Royalty Co. of Texas,* 117 Tex. 439, 6 S. W., 2d, 1,039, reported in 60 A. L. R., 890, where it is followed by an annotation in which all but three of them are discussed to some extent. Collectively the cases carry recognition that under proper circumstances à covenant to mine with reasonable diligence may be considered implied in a lease calling for the payment of a royalty with no language regulating the conduct of operations, but no one of them furnishes a precedent for declaring the circumstances of the present case sufficient for the purpose. Included among them are three Alabama decisions, *Collins* v. *Smith,* 151 Ala., 133, 43 So., 838; *Collins* v. *Abel,* 151 Ala., 207, 44 So., 109, 125 Am. St. Rep., 24; and *Majestic Coal Co.* v. *Anderson,* 203 Ala., 233, 82 So., 483, which are not authority for the principle urged but grant recognition to it in holding that a mining contract which contains no express covenant for operation is unilateral and void in that jurisdiction without regard to agreements in it which would raise an implied covenant in others. In the last of these cases the court remarked that however doubtful the correctness of the rule might be, it had prevailed in the state for twelve years and would be followed. The Arkansas case of *Millar* v. *Mauney,* 150 Ark., 161, 234 S. W., 498, dealt with a lease containing a covenant not to cease work for more than three months continuously and has no bearing upon the present issue. Of three North Carolina decisions one dealt with a lease defining its purposes as "testing, developing and operating" for minerals and the facts showed a failure to work the mine for a period of five years, *Maxwell* v. *Todd,* 112 N. C., 677, 16 S. E., 926. Of three West Virginia cases one dealt with the lapse of forty years (a most unreasonable time), *Shenandoah Land & A. Coal Co.* v. *Hise,* 92 W. Va., 238, 23 S. E., 303, and another declared that operation within

a reasonable time was evidently contemplated by the parties, *Chandler* v. *French,* 73 W. Va., 658, 81 S. E., 825, L. R. A. 1915 B 561. A Kentucky case, *Kentucky Coke Co.* v. *Smith,* 207 Ky., 485, 269 S. W., 558, shows a lapse of twenty years without mining.

There is no occasion on the facts presented to determine whether the principle applicable in some jurisdictions where mining is a substantial industry should be adopted in this state. Our case is distinguishable from those cited' to us wherein such a covenant was held to be implied on a variety of grounds. The lapse of time between the plaintiff's acquisition of title to the reversion and the commencement of its process was less than four months. The defendants' abandonment of mining might be attributable to the litigation involving the lease and its construction initiated by the plaintiff. The plaintiff's title was subject to the lease by express recital in the deed evidencing the judicial sale. The price paid at that sale must be considered as having been determined to some extent by the length of the unexpired leasehold term and the omission from the terms of the lease of any covenant such as that sought to be read into it by implication. There is no sound reason why a court should increase the value of a reversion sold by judicial sale.

> *Appeal dismissed.*
> *Decree below affirmed.*