# ERWIN & WILLIAMS *vs.* ERWIN.

1. As to the distinction between propositions, the acceptance of which amounts to a valid contract, and proposals to render a gratuitous kindness, which are not designed to create legal obligations on the parties.

2. A complaint (under the Code) alleged the contract sued on to be "in substance as follows: That in consideration that plaintiffs would then and there buy out the store-house and lot, situate in the town of C., then occupied by M. L. E. & Co. as a store-house, and the stock of dry goods then and there owned by them, he (the defendant) would assist them, by endorsing their paper, and advancing them money, to enable them to carry on the mercantile business advantageously"; or, as alleged in another count, "would endorse for them in Charleston, and, if necessary, advance money to them, to enable them to carry on the mercantile business": *Held*, on demurrer being interposed, that the contract was too indefinite and uncertain to support an action.

APPEAL from the Circuit Court of Chambers.

Tried before the Hon. ROBERT DOUGHERTY.

THE complaint in this case (the suit having been commenced in February, 1853) was as follows : "The plaintiffs claim of the defendant the sum of $10,000, as damages for the breach. of an agreement, entered into by him on the first day of December, A. D. 1851, in substance as follows : That if the plaintiffs would then and there buy out the store-house and lot, situate in the town of Cusseta, in the county of Chambers, and State of Alabama, then occupied by M. L. Erwin & Co. as a store-house, and the stock of dry goods then and there owned by said M. L. Erwin & Co., he, the defendant, would assist the plaintiffs, by endorsing their paper, and advancing them money, to enable them to carry on the mercantile business advantageously. Yet, although the plaintiffs did then and there comply, and have complied, with all the provisions of said agreement on their part, of all which the defendant had notice, the defendant has failed to comply with the following provisions, viz., that he would assist the plaintiffs, by endorsing their paper, and advancing them money, to enable them to carry on the mercantile business advantageously ;

but, on the contrary thereof, refused so to do, although plaintiffs requested him to endorse their paper."

Two other counts were added in the complaint, one of which alleges the defendant's promise to have been, that " he would endorse for them in Charleston, and, if necessary, advance money to them, to enable them to carry on the mercantile business," and avers that " it was necessary for him to advance money to enable them to carry on the mercantile business "; while the other alleges the contract to have been, " that in consideration that the plaintiffs would buy, and did then and there agree and undertake to buy," said store-house and lot and stock of dry goods, " he, the defendant, promised and agreed that he would endorse for them in Charleston, and, if necessary, advance them money, to enable them to carry on the mercantile business."

The defendant demurred, in short by consent, to each count in the complaint, assigning, among several grounds of demurrer, the following : " Because there is no consideration to support said supposed contract"; and " because there is an utter want of certainty in the provisions of said contract, as to the extent to which defendant was to endorse plaintiffs' paper, or advance them money, and also as to the length of time for which defendant was to endorse and advance, and therefore the contract affords no measure of damages." The court sustained the demurrer to each count, and this is now assigned for error.

BELSER & RICE, with whom was D. CLOPTON, for the appellants :

1. Admissions which have been acted upon by others are conclusive against the party making them, in all cases between him and the person whose conduct he has thus influenced.—1 Greenl. Ev. §§ 207, 208, 204.

2. The law leans against the destruction of an instrument by reason of an uncertainty, and presumptively attaches to it those consequences and incidents which, in common sense, are appurtenant to its terms, and which the parties must have understood and intended should be attached thereto. Thus, when a written contract, or a verbal agreement, is silent as to the time of performance, the law adds the term that it

shall be executed within a reasonable time. In some cases, from the very nature of the thing to be performed, the party may have his life-time to perform it.—11 Ired. L. Rep. 181; Chitty on Cont. 107, and note (b), 625, and note 2 on p. 625; 2 Bos. & Pul. 265; Allen v. Green, 19 Ala. 39; 6 East 564; 4 Barn. & Ald. 268; 13 East 102.

3. There are two modes of making simple contracts and declaring on them : the one is, when one party promises to do a certain thing, and in consideration of that promise the other party engages to do something on his part. Then, as nothing is done but the making of the promises, it is absolutely necessary that mutual valid promises, amounting to an express contract, should appear ; otherwise one of the parties might claim the benefit of the promise of the other, without in return doing any act, or being liable for any loss whatever. In such a case, it is necessary only to set out the mutual promises, without averring performance on the part of the plaintiff. The other mode is, when one party promises, in consideration that the other will or will not do some act. Then, no mutual promise need be set forth or exist ; but it is necessary and sufficient to show the act done. It is not requisite that it should appear the plaintiff might have been sued for not doing the act ; for he may recover after the thing done, though it was at his election whether he would do it or not up to the moment of its execution.—Gurvin v. Cromartie, 11 Ired. L. Rep. 174, 179 ; Pillans & Rose v. Mierop & Hopkins, 3 Burr. 1665, 1675.

4. It is not the adequacy of the consideration, which determines the validity of the promise, but it is the doing of some thing by the party to whom the promise is made ; and it is a familiar elementary principle, that such act, however trifling, constitutes a sufficient consideration. "The least spark of a consideration will be sufficient."—14 Ala. 156 ; 11 Ired. L. 178-9 ; 3 Burr. R. 1665, 1675 ; 4 Dallas 226 ; 2 Foster (N. H.) 246 ; 16 Maine 394, 397; 5 Pick. 384 ; 6 B. Mon. 430 ; 1 Metc. 91-2-3 ; 2 Cushing 151; 2 N. Hamp. 357-8 ; 1 Caine's R. 45 ; 17 Maine 372 ; 4 Ired. L. 257 ; 5 Cranch 142 ; 17 Conn. 511; McKeen v. Harwood, 15 Ala. 792, approving 18 Johns. 337, therein cited. "The promise and undertaking of the defendant did occasion a possibility of loss to the plain-

tiffs."—5 Pick. 384 ; 3 Burr. 1674, 1667, 1671-2. The act was done at the request, or on the procurement, of defendant. 3 Burr. 1671-2. Kirksey v. Kirksey, 8 Ala. 131, was decided by two judges against one, against an overwhelming current of authority, against elementary principles, and is not law.

The objection of the defendant, founded on the supposed uncertainty of his own agreement and promise, cannot shelter him from liability. The rules for construing agreements are stated in Chitty on Con. 72 to 90; *ib.* 107 and note (b); *ib.* 625 and n. 2. It must be construed most strongly against him. Mercantile contracts are to be construed according to the usage and custom of merchants ; " and parol evidence may be adduced to show the understanding of the parties as to their contract,— the meaning which they attached to certain expressions used by them in the contract.—Renner v. The Bank of Columbia, 9 Wheat. 587 *et seq.;* Eaton v. Smith, 20 Pick. 150 ; Chitty on Con. 83. Although no amount of advances or endorsements was definitely named, yet, as the business was well known to all the parties, and in a specified place, the intention of the appellee in making the promise was, to give the appellants such an amount of aid as would enable them to carry on this known business to advantage; that is, to keep up their stock of goods as usual in such a store, in such a town, and according to the well-known custom of merchants in that town, where the parties all resided. Contracts must have a reasonable construction ; the law will fix a reasonable time, or a reasonable amount, where none is specified ; and what is a reasonable time, or a reasonable amount, is a question of fact for the jury under all the circumstances of the case.

The complaint in this case was framed under the Code, and in strict conformity with the forms therein prescribed. If the Code had never been adopted, a good declaration at common law would have been framed, containing all the usual explanatory and auxiliary averments, the want of which is now urged as an objection against this complaint. It was supposed that the Code rendered this mode of declaring unnecessary, and relieved the plaintiff from making the explanatory averments which were necessary at common law.

WHITE & PARSONS, *contra:*

If both parties to a contract are not bound by it, neither is.—Br. Bank at Huntsville v. Steele, 10 Ala. 915 ; Same v. Robinson, 5 *ib*. 623 ; James v. Stiggins, 13 *ib*. 830. In this case, there is not the slightest ground for the pretence that plaintiffs were under any obligation to buy the store-house and stock of goods ; the contract is, " if they would do it, then defendant would endorse and advance money," &c. To make this a contract, there should be an obligation on their part to buy ; so that if they failed to comply, the defendant could hold them liable for its breach. The mind can come to no other conclusion, than that this proposition is to be regarded as one for love and favor to be extended to the plaintiffs by the defendant, and it was not in contemplation of either party to bind plaintiffs to purchase the stock of goods, &c.—Br. Bank v. Steele, *supra;* see, also, Falls v. Gaither, 9 Por. 605. There is no mutual promise between these parties, and it will not be found in the pleadings.—Kirksey v. Kirksey, 8 Ala. 131; Burnett v. Bisco, 4 Johns. 234. "If A sign a writing that he will sell B a house on certain terms, it is a mere proposition, and not an agreement, unless B assents to it."—Tucker v. Wood, 12 Johns. 190 ; Cooke v. Oxley, 3 Term R. 654 ; 14 East 45 ; 6 Wend. 103.

The contract set up in each count of this declaration is void for uncertainty as to the time for its continuance, and the amount of money to be advanced, or of notes to be endorsed. Moreover, there is nothing to show that this contract can be satisfied by the advance of any amount, or by an endorsement for any amount, or for any number of times. This view is not answered by the assertion of the admitted principle, that where no time is fixed, the law gives a reasonable time. It is believed this rule applies only to contracts which specify not only what is to be done, but also how much, and how long. This precise question seems to be presented in the case of Moorehouse v. Colvin, 9 Eng. Law and Eq. R. 136. A mere contingent possibility, not coupled with an interest, is no subject of sale ; as " all the wool one shall ever have."—Parsons on Cont. 438, and cases cited in note g. The thing sold must be specific, and capable of certain identification.—*Ib*. 439. For how much must defendant endorse, to satisfy the requi-

sitions of this contract? How much must he advance? How long must he continue these duties? Is the contract to continue for one year, or for fifty? Is defendant to advance and endorse for $1000, or for $50,000? Who can answer these questions in a legal manner? We insist, these difficulties are insurmountable, and that they are conclusive against the plaintiffs.—1 Story's Eq. Com. § 764, and cases cited in the notes.

There is no sufficient breach in either of the counts. No amount of money was requested, nor was there any amount as to endorsement requested. The request was, generally, to endorse and advance, without specifying the amount in either case.

There is no sufficient and legal averment of performance on the part of plaintiffs. It is a legal conclusion, and not a fact, to say, "yet, although the plaintiffs have complied with all the promises on their part," &c. The test is this: Can the court, on demurrer, say the facts show that plaintiffs have complied?

CHILTON, C. J.—We should carefully distinguish between propositions, the acceptance of which amounts to a valid contract, and proposals to render a gratuitous kindness, which are not designed to create legal obligations upon the parties. It may be, in many cases, difficult to discern the line which separates them; it nevertheless exists. No general rules can be laid down as applicable to all cases, which may serve as a guide in arriving at the true construction of each proposal, and the intent and meaning of the parties in making it. Each case must depend upon its own peculiar circumstances. We must look to the relative situations of the parties to the transaction, the benefit to the party proposing, or the detriment to the other party, constituting the consideration, and the form, nature, and character of the proposal, as evincing an intention to make a contract, or to confer a mere gratuity. If the parties really designed to enter into a contract, any benefit to the promisor, or detriment to the promisee, however slight, constitutes a valid consideration; so, also, if the parties make mutual promises, the same being executory, and the promise of the one forms the consideration of the other. In all such

cases, the contract is considered as based upon a valid consideration, and if otherwise capable of being enforced, it will be upheld.—Parsons on Con. 357; Com. Dig., Action on the Case, Assumpsit (B 1.)

The cases of Kirksey v. Kirksey, 8 Ala. Rep. 131, and Forward *et al.* v. Armistead, 12 *ib.* 124, are cases which may serve to illustrate the distinction between proposals which, when accepted, amount to contracts, and those which are merely gratuitous. We should be inclined to hold, that the alleged contract set up in the several counts in the declaration in this case, falls within the influence of these decisions, and should be regarded as a mere offer to render a kindness to the plaintiffs, which was not intended or regarded by any of the parties as a contract, creating a legal obligation, as it is fair to presume that, had the plaintiffs agreed to purchase the goods and the store-house and lot, as a *consideration* for the promise to endorse their paper and make advancements on the part of the defendant, they would have insisted on having something definite in return—some terms which were capable of being ascertained and enforced as against the defendant.

But we prefer resting our opinion upon the fact, that, conceding this to be a contract, it is so indefinite and uncertain as to be wholly void. The defendant was to endorse the plaintiffs' paper, and to make advancements. When, and for how much, was he to endorse, and how often? How long should the obligation to endorse rest upon him? How much money was he to advance, and when, and on what securities, were the advances to be made? The contract is silent as to all these matters. If it be answered, that he was to advance enough to enable them to carry on their mercantile business, this does not aid the matter ; for the question recurs, Upon what scale is it to be carried on? The capital must bear some just proportion to the nature and size of the business to be carried on, and this is left wholly unsettled. It is clear, then, that no breach could be assigned upon it, which could be compensated by any criterion of damages to be furnished by the contract itself, and it is void for uncertainty.—See Moore v. Smith, 19 Ala. R. 774-783 ; 1 Chitty's Pl. 261, 232, 236-7; Chitty on Con. 72 ; Figs v. Cutler, 3 Stark. R. 139; Sherman v. Kitsmiller, 17 S. & R. 45.

The demurrer to the several counts in the complaint was properly sustained. No provision in the Code dispenses with the statement of such a cause of action in the complaint as may be enforced. This contract is too uncertain to avail.

Let the judgment be affirmed.