184 So. 173

## GRAND INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS v. COUCH.

### 6 Div. 359.

Supreme Court of Alabama.

Oct. 6, 1938.

Rehearing Denied Nov. 10, 1938.

612

Walter S. Smith, of Birmingham, for appellee.

Horn, Weisell, McLaughlin & Lybarger, of Cleveland, Ohio, and Cabaniss & Johnston, L. D. Gardner, Jr., and Jos. F. Johnston, all of Birmingham, for appellant.

FOSTER, Justice.

On April 9, 1929, an investigation was conducted by R. W. Rogers, Superintendent of the Seaboard Air Line Railway Company, of charges preferred against T. Ed Couch, appellee, for a violation of rule 702 of that company, which is as follows: "No person who is intemperate, dishonest, immoral or otherwise vicious will be permitted to enter or remain in the service." Appellee was a locomotive engineer of the railroad, and a member of the Internation-

al Brotherhood of Locomotive Engineers. This is an unincorporated union, with a constitution and by-laws.

The investigation had no connection with the union, but was a routine railroad proceeding. As a result of it, appellee was on May 10, 1929, dismissed from the service of the railroad.

A stenographic report of the proceedings was introduced in evidence, and showed that there had been much complaint in respect to his bearing toward women passengers on the trains of the railroad, while he was riding to and from his home, not on duty. He was present at the hearing, and had a representative pursuant to the rule, and made no objection to it, but introduced witnesses, and he testified at length giving his version of the occurrences, disclaiming all improper motives in that connection.

There was a provision in the by-laws of the association, (section 27 [a] called "Statutes") as follows: "It shall be the duty of the local committee of adjustment of each division to meet at such time and place as the chairman may designate, and adjust if possible with the local officials of the road or system the grievances of the members of their respective divisions." On June 12, 1929, he wrote to his division No. 684, located at Atlanta, Georgia, calling attention to his dismissal for violating rule 702, and declaring that he is not guilty, and requesting them to handle this as his grievance. His division considered the request at its meeting on June 23, 1929, and appointed a committee to look into it. They had a copy of the stenographic report of the investigation by the railroad. On June 25, 1929, the committee reported that they had conferred with appellee's representative at the hearing, and failed to find sufficient grounds to handle the request made by him. On that day, by authority of the division, the secretary and treasurer wrote defendant that the "Division 684 cannot handle your grievance."

On April 27, 1931, nearly two years thereafter, appellee again wrote to his division in Atlanta, declaring his appeal from their decision to the general committee of adjustment. On May 11, 1931, he had a letter from his division that they had never decided that he had a grievance, and that "there was no refusal to it."

On May 14, 1931, he wrote the grand chief engineer of the order calling attention to the situation and declaring an appeal to him to handle it. On May 18, 1931, the chief engineer wrote the division, of which he was a member, for information, and finally on October 10, 1931, he wrote appellee that the case had not been referred to him by division 684, and until so he could not handle it. Further correspondence was had with the division, and on November 22, 1931, they wrote him that on June 25, 1929, his request was thoroughly discussed and decided that he had no grievance.

On April 25, 1933, he appealed to the Grand International Convention of the Brotherhood. On May 2, 1933, he had a response from the grand chief engineer that under section 36(k) standing rules, "there can be no appeal other than through a referendum vote of the membership under the jurisdiction of the general committee of adjustment on the individual railroad." His appeal was not recognized.

The basis of his suit is that by a refusal to meet and adjust his grievance with the railroad, he was not reinstated, lost his job permanently, could not get work, or earn compensation, and that defendant thereby breached its contract.

Upon the trial the court charged the jury that a grievance is a just cause for complaint, because of an injury or wrong that is unjust or oppressive, and left the question to the jury to determine whether he was unjustly treated by the railroad; and that he was not so treated if he had a fair trial and the railroad acted in good faith in finding him guilty from the evidence submitted on its investigation, and in that event he would have no grievance.

▇▇▇ (1) Appellant insists that being a member of a voluntary unincorporated association, appellee could not sue the association, as being in a measure a suit against himself, and further that the relation is such that it is only in equity that a member, as a partner, can sue his own company.

This may be the rule as to partnerships for commercial purposes, notwithstanding section 5722, Code, permitting a suit against it without joining the partners. Merrill v. Smith, 158 Ala. 186, 48 So. 495. No decision on that point however is here made. But a different rule obtains in respect to nonprofit fraternal, charitable or mutual aid associations, when a statute so authorizes. Section 5724, Code; 7 Corpus Juris Secundum, Associations, p. 23, § 1, p.

91, § 36, p. 101, § 37; 5 Corpus Juris p. 1374, § 134; 4 Am.Jur. p. 466, § 18, p. 476, § 32; Grand International Brotherhood of Locomotive Engineers v. Green, 210 Ala. 496, 499, 98 So. 569; Brotherhood of R. Trainmen v. Barnhill, 214 Ala. 565, 108 So. 456, 47 A.L.R. 270; 4 Am.Jur. pp. 462, 463, § 13; 63 Corpus Juris p. 662, § 11; Rueb v. Rehder, 24 N.M. 534, 174 P. 992, 1 A. L.R. 423. We cannot sustain this contention by appellant.

■ (2) The next contention is that the complaint shows the breach of no contract which will support an action at law, and that the evidence supports that view.

True, the cases last above cited hold that the constitution and by-laws of such an association are in the nature of a contract between it and the members. But for a provision of them to be of such sort as that its breach will support an action, it must possess the essentials of a duty to do a specific act. There must be more than a duty to exercise a judicial determination whether a duty to act exists. Compare 12 Am.Jur. p. 558, § 66, p. 562, § 71; 13 Corpus Juris p. 266, § 59, and notes on page 267.

■ When, as in this case, such a determination is made, the regulations provide for an appeal to be taken. The refusal to consider the appeal was said to be due to the failure of the division to make declaration of the existence of a grievance, and in one connection it is said to be for the want of a referendum. Section 49, constitution, provides that all appealed cases shall be forwarded to the grand officers; and section 49, statutes, provides that should any member feel that injustice has been done him by any decision of his division he may appeal to the grand chief engineer, whose decision shall be final unless reversed by the next Grand International Division in convention; and section 3(a), constitution, that the Grand International Division shall have exclusive jurisdiction of all subjects pertaining to the brotherhood, and its decision upon all questions shall be the supreme law of the brotherhood. Section 50, statutes, provides that any member in good standing who feels that an injustice has been done him may appeal to the general committee of adjustment within sixty days; and section 36(k) standing rules, that there can be no appeal other than through a referendum vote of the membership under the jurisdiction of the general committee of adjustment on that railroad.

These provisions show that the local division is obligated to exercise a judicial determination, subject to review, in the order, not a fixed duty to act contrary to the result of that determination.

■ Also the rule is clear that "an agreement to be binding must be definite and certain," and "must be sufficiently definite to enable the court to determine its exact meaning and fix definitely the legal liability of the parties." 12 Am.Jur. pp. 554, 556, § 64; 5 Alabama Digest, Contracts, pp. 18 and 19, ⊸9; Pulliam v. Schimpf, 109 Ala. 179, 19 So. 428; Goodwin v. Adler, 220 Ala. 69, 124 So. 108; Restatement Law Contracts, § 32, and Alabama annotations; Harris-Cortner & Co. v. Morgan, 214 Ala. 599, 108 So. 449; 13 Corpus Juris 266.

■ As a feature of that principle, it is also said that "where no breach of a contract could be assigned which could be compensated by any criterion of damages furnished by the contract itself, the contract is void for uncertainty," Erwin v. Erwin, 25 Ala. 236, 243, quoted in Jones v. Lanier, 198 Ala. 363, 367, 73 So. 535, 537, and Pulliam v. Schimpf, supra, Elmore, Quillian & Co. v. Parrish Bros., 170 Ala. 499, 54 So. 203, also, Howard v. East Tennessee, V. & Ga. R. Co., 91 Ala. 268, 8 So. 868; Christie, Lowe & Heyworth v. Patton, 148 Ala. 324, 42 So. 614.

■ Since there can be no action founded on an agreement to render a service in the discretion and judgment of the one so bound, when there is no abuse of the discretion, or when there is no standard by which to measure damages for its breach furnished by the contract or the law, our conclusion is that count 6 of the complaint is subject to the demurrer interposed to the effect that it fails to show the breach of an enforcible obligation, and that on the evidence submitted the affirmative charge should have been given at the request of appellant.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.